### PENNELL v. PHILADELPHIA & R. RY. CO.

(Circuit Court of Appeals, Third Circuit.   January 25, 1913.)

#### No. 1,646.

RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—AUTOMATIC COUPLERS—"CARS."
   Safety Appliance Act March 2, 1893, c. 196, § 2, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), requiring all "cars" used in moving interstate traffic to be equipped with automatic couplers, does not apply to the coupling between a locomotive proper and its tender.

   [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*

   For other definitions, see Words and Phrases, vol. 1, pp. 969, 970; vol. 8, p. 7596.

   Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; John B. McPherson, Judge.

Action at law by Mary Genevieve Pennell, administratrix of the estate of Jay Allen Pennell, deceased, against the Philadelphia & Reading Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

George Demming and Charles H. Burr, both of Philadelphia, Pa., for plaintiff in error.

Wm. Clarke Mason, of Philadelphia, Pa., for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and RELL-STAB, District Judge.

BUFFINGTON, Circuit Judge. In the court below, the plaintiff, Mary G. Pennell, brought suit under the provisions of the acts of April 22, 1908, and April 5, 1910, relating to the liability of interstate common carriers by railroads to their employés in certain cases, against the Philadelphia & Reading Railway Company, to recover damages for its alleged negligence, causing the death of Jay Allen Pennell, her husband and its employé. While working as a fireman on a locomotive of the defendant company, hauling a freight train in interstate commerce, the forward part of the engine broke loose from the tender, and Pennell, who at the time was standing above the coupling, fell on the track, was run over, and killed. The negligence charged was an alleged violation by the railroad of the act of Congress of March 2, 1893 (27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174]), which,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff contended, required it to place automatic couplers between the forward end of a locomotive and its tender.   The act provides:

"It shall be unlawful for any such common carrier to haul, or permit to be hauled or used on its line, any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be coupled without the necessity of men going between the ends of the cars."

In Johnson v. Southern Pacific Company, 196 U. S. 16, 25 Sup. Ct. 158, 49 L. Ed. 363, the word "car" was held to include a locomotive, and that a railroad was bound to equip engines with automatic couplers, "since engines have occasion to make couplings more frequently" than cars.   On the theory that the effect of that decision is to hold "that the engine is a car, and that the tender is a car, each separate and apart from the other," it is now contended that, when these parts are coupled together to form a locomotive, it must be by an automatic coupler.

We cannot agree to such a construction.   To do so would be to lose sight of the real purpose of the act.   The law was not passed to secure stronger car couplings, for the old-fashioned link and pin were, when once made, and considered solely as couplings, possibly stronger and more reliable connections than automatic ones.   It was the constant killing and maiming of men incident to going between the bumpers to couple and uncouple cars that the law sought to avoid, and not to insure the stability of the coupling after it was made, much less the stability between the parts of a locomotive itself.   If the instability or insecurity of couplings after they were made had also been a recognized evil, and if Congress had meant to remedy such evil, the requirements of the act would have extended, not merely to the automatic character of the couplings, but also to their strength and durability.   The union of engine and tender is in large measure a permanent one, and the act of joining the two is of such rare occurrence, and is so alien to transportation, and an accident resulting from the joining of such parts so unheard of, that Congress could not have had it in view to require an automatic coupler at that point.

Agreeing, as we do, with the conclusion reached by the court below, that "no decision has been cited that requires an automatic coupler between the engine proper and the tender, and there seems to be no reason for requiring it at that point," the judgment is affirmed.